IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TODD WAYNE SUMMERS, (ID# 11515-091), | § § § | |
| Plaintiff, VS. | § § § | CIVIL ACTION NO. 1:13-CV-138-BL |
| UNITED STATES OF AMERICA, | § § § § | |
| Defendant | § | Assigned to U.S. Magistrate Judge |

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [1]

Pending before the Court is the Motion for Summary Judgment [doc. 111] of Defendant United States of America ("United States" or "USA"). Having considered the motion, brief in support and appendix, Plaintiff's affidavit filed in response, and Defendant's reply, the Court concludes that the motion for summary judgment should be **GRANTED**.

### I. BACKGROUND

Plaintiff Todd Wayne Summers initially filed this suit naming the Bureau of Prisons ("BOP"), several individual employees at the Metropolitan Detention Center in Los Angeles ("MDC Los Angeles") and at the Federal Correctional Institution in Big Spring, Texas ("FCI Big Spring"), a United States Public Health Service ("USPHS") officer, and a contract physician. Complaint 3–4 (doc. 1.) He asserted claims against the individual defendants under *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971) and he also asserted a medical negligence claim under the Federal Tort Claims Act ("FTCA"). Complaint 7, (doc. 1). The Court initially dismissed two of the defendants under the screening authority of 28 U.S.C. § 1915A. (Doc. 16.) After service of the remaining

---

[1] Both Plaintiff Todd Wayne Summer and the remaining Defendant United States of America have each filed a consent to proceed before the United States Magistrate Judge, such that this magistrate judge can address and resolve all remaining matters in this case under 28 U.S.C. § 636(c). (Docs. 5, 50.)

claims against other defendants, the Court issued an order granting the remaining defendants' motion to dismiss, including dismissal of Summers's FTCA claim as time-barred. (Docs. 47, 48.)

Summers filed an appeal, and the United States Court of Appeals for the Fifth Circuit affirmed, except as to the dismissal of the FTCA claim, and remanded that claim for further proceedings. *Summers v. Bureau of Prisons*, 627 F. App'x 388, 389 (5th Cir. 2015). This Court then reopened the case, and accepted Summers's amended complaint. Amended Complaint (doc. 75-1); Order (doc. 76). The Court denied Summers's second motion for appointment of counsel related to the FTCA claim, but Summers filed an interlocutory appeal of that ruling. (Doc. 82). This Court stayed and administratively closed the case pending that appeal. (Doc. 84). The Fifth Circuit affirmed this Court's order denying Summers's motion for counsel. *Summers v. Bureau of Prisons*, 691 F. App'x 222, 222–23 (5th Cir. 2017). This Court then reopened the case and granted Summers's motion to list the United States of America as the sole defendant. Order (doc. 94). After repeated amendments and extensions of the deadlines in the Court's scheduling order, the United States filed the motion for summary judgment in compliance with the extended deadline. (Docs. 106, 111). Summers alleges in his amended complaint that the medical staff at the BOP institutions he was housed provided negligent medical care, which resulted in a rectal removal procedure and resulting end colostomy. Am. Complaint 3–14, (doc. 75-1). He alleges that the BOP officials failed to diagnose and properly treat his complaints of stomach pain and rectal bleeding, which caused his injuries. Summer contends that if the medical staff had timely diagnosed his benign colonic tumor, he would not have to use a colostomy bag for the rest of his life. Am. Complaint 14, (doc. 75-1). Summers's amended complaint asserts two causes of action against the United States of America: a claim that his constitutional rights were violated under *Bivens,* 403 U.S. at 388; and a claim under the FTCA for medical negligence. Am. Complaint 2, (doc. 75-1).

Defendants motion for summary judgment was supported by an extensive brief. (Defendant's Motion for Summary Judgment ("Def.'s Mot. for Summ. J.") [doc. 111]; Defendant's Brief in support of Motion for Summary Judgment ("Def.'s Br.") [doc. 112].) The motion for summary judgment was also supported by an extensive appendix (Def.'s App.") containing: (1) Summers's BOP medical records for 2011 (pages 1–108); (2) Summers's BOP medical records for 2012 (pages 109–299); (3) Summers's BOP medical records for 2013 (pages 300–532); (4) a copy of an Order Granting Motion for Evaluation in *United States v. Summers*, No. 09-CR-099-D (D. Wyoming Jan. 7, 2011) (pages 533–35); and (5) the Declaration of BOP Senior Attorney Darrrin C. Scott (pages 536–37). Although Summers did not timely file any responsive materials to the summary judgment motion, this Court granted his motion to file a responsive affidavit, such that Summers was permitted to file a document entitled "Affidavit in Response and In Opposition to Defendant's Motion for Summary Judgment." (Doc. 121.) The USA then filed a reply. (Doc. 122.)

## II. ANALYSIS

### A.  Summary-Judgment Standard

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F. 3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits or declarations, documents, depositions, etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to

3

support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is **required** to consider only the cited materials, it **may** consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."*Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)(citation omitted).

In evaluating whether summary judgment is appropriate, the Court "views 'the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (quoting *Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005)). "After the non-movant has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment." *Woodberry v. Dallas Area Rapid Transit*, No. 3:14-CV-03980-L, 2017 WL 840976, at *3 (N.D. Tex. Mar. 3, 2017) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Woodberry*, 2017 WL 840976, at *3 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)).

B.  **Summary Judgment Facts**

As noted above, the USA has provided an extensive appendix, and in the USA brief recited in detail the chronology of relevant medical records the USA contends relate to Summers's claims. Def.'s Brief at 11-18. That chronology documents Summers's first complaints of gastrointestinal problems while at MDC Los Angeles in April and May 2011, and carries through a detailed review of the records of care related to such issues through the May 13, 2013 surgery procedure to remove a precancerous rectal tumor and the resulting colostomy. Def.'s App. 447–448. The Court incorporates that section of the USA Brief as the facts as stated by the USA.

Summers did not provide any records or other evidence in response to the summary judgment motion other than his document entitled "Affidavit in Response." As Summers recites that document is "true and correct pursuant to 28 U.S.C. § 1746," the Court construes it as a Declaration under 28 U.S.C. § 1746. Summers Declaration 3, (doc. 121.) The Court incorporates that Declaration here:

I, Todd Summers aver and state as follows:

1.) There are several facts in dispute between the parties as to the Plaintiffs allegations and Defendant's denial of responsibility.

2.) The facts in dispute include but are not limited to:

    a.) Whether or not Plaintiff has an expert witness available.

    b.) Whether or not Plaintiff informed Dr. Partida of blood in his stool.

    c.) Whether or not the Defendant's Brief in Support of the Motion for Summary Judgement deliberately avoids mentioning the implications of the Plaintiffs positive FOBT test taken on the same day as the negative test for fecal leukocytes mentioned on page 7.

    d.) Whether or not the Plaintiff informed Physician Assistant Brian Alexander of pain, blood in his stool and rectal bleeding as mentioned on page 7 of the Government's Brief in support of Summary Judgement. Plaintiff has asserted that following the positive FOBT he repeatedly informed PA Alexander of the blood and pain he was experiencing but that P A Alexander

did not take any positive steps until the presence of blood became obvious to P A Alexander.

e.) Whether or not the Brief in support of Summary Judgement accurately reflects Defendant's depiction of Plaintiffs refusal of surgery on page 11. The Brief in Support glosses over the fact that Plaintiff was given a choice between (1) immediate surgery to remove the tumor and receive a permanent colostomy and (2) a rectal ultrasound and treatment that might shrink the tumor prior to surgery in an attempt to avoid a permanent colostomy. Plaintiff's choice of option 2 was not a refusal of surgery as it included surgery after treatment to reduce the size of the tumor. Plaintiff acknowledges he was given no promises that the tumor would shrink enough to avoid a permanent colostomy and that he was told that with option 2 he would still have to have at least a temporary colostomy. So there was never an absolute refusal of surgery by the Plaintiff as the Defendant seem to imply, there was only the selection of a surgical treatment option less likely to sought by Dr. Partida as the Plaintiff requested, the eventual surgery would have occurred lead to a permanent colostomy.

f.) Whether or not the four month delay between the Plaintiffs request for a second medical opinion prior to such life changing surgery and Dr. Partida actually seeking a second opinion accounts for the majority of the statements in the Defendant's brief concerning the Plaintiffs refusal of surgery. Plaintiff notes that the Defendants agree that after receiving the second opinion Plaintiff promptly agreed to surgery. Plaintiff further notes that this surgery did not occur until May 13, 2013 over a year after his medical records had been forwarded for a second opinion. Plaintiff posits that if a second opinion had been promptly as much as 16 months earlier and that the medical notes concerning refusal of surgery would never have existed.

3.) Plaintiff further notes that he repeatedly complained to prison authorities and requested necessary testing with no positive change of his treatment protocols.

4.) Plaintiff must now wear a colostomy bag for the rest of his life.

5.) That Plaintiff appraised medical staff on multiple occasions that he needed specific testing at an early date to avoid the colostomy bag alternative, but from start to finish it took medical staff almost 2 years to provide critical care necessary to prolong his life.

Declaration 1–3, (doc. 121).

The Fifth Circuit recognized in *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1989) that the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute

for an affidavit if made "under penalty of perjury" and verified as "true and correct." *Id.* at 1306. In order for verified or sworn declarations to constitute proper summary judgment proof, however, they must conform to the requirements of affidavits, i.e, they must establish the affiant's competency to testify to the matters in question, be based upon personal knowledge, and contain a clear explication of factual information that would be admissible at trial, not mere unsupported conclusions. *See Sanches v. Carrollton-Farmers Branch Ind. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) ("Conclusional allegations and denials, speculation, and unsupported assertions are insufficient to avoid summary judgment."); *Marshall v. East Carroll Parish Hospital*, 134 F.3d 319, 324-25 (5th Cir. 1998)(holding conclusory, unsupported, statements in an affidavit insufficient to create a genuine issue of material fact); *see also* Fed R. Civ. P. 56(c)(4)("An affidavit of declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated".)

Review of Summers's Declaration shows that it offers nothing in opposition to the USA motion for summary judgment other than allegations and contentions. The document does not recite that it is providing facts based upon personal knowledge, and the document instead is essentially an argument by Summers of his positions in this suit. Rather than state facts, Summers posits questions, such as "whether or not" certain things took place or amounted to viable issues to resolve. A noted above "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Woodberry*, 2017 WL 840976, at *3. Courts have no duty to sift through the record in search of evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)(citations omitted).

C.     **Summers's Medical Malpractice Claim under the FTCA**

### (1) Applicable Legal Standards

Summers's primary claim is for monetary damages under the FTCA based upon the medical malpractice and medical negligence of BOP medical providers at both MDC Los Angeles and at FCI-Big Spring. Am. Complaint 2–14 (doc. 75-1). The FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under the substantive law of the state in which the negligent acts occurred. 28 U.S.C.A. § 1346(b)(West 2006); 28 U.S.C.A. § 2674 (West 2006); *see also Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003). Summers complains of alleged medical negligence occurring at BOP facilities in both California and Texas, so conceivably the law of each state could apply to different portions of Summers's lawsuit. *See Ayers v. United States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law."). Regardless, because as explained below there appears to be no relevant difference between the law of California and Texas on the issue of what elements a plaintiff must prove to recover on a medical malpractice claim, the Court need not undertake a detailed choice-of-law analysis. *See Centex Homes v. Lexington Ins. Co.*, No. 3:13-CV-719-BN, 2014 WL 1225501, at *5 (N.D. Tex. Mar. 25, 2014) ("When two states' laws are substantially the same, this precludes the need to undertake a choice-of-law analysis.") (citing *Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668 n.17 (N. D. Tex 2007); *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 377–78 (Tex. App.—Fort Worth 2003, pet. denied)).

In a medical malpractice action under Texas law, a plaintiff bears the burden of proving four elements: (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) a causal connection between the breach of care and the injury. *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)(citing *Quijano*, 325

F.3d at 564-567); *see also Bryan v. Sherick*, 279 S.W. 3d 731, 732-33 (Tex. App.--Amarillo 2007, no pet); and *Denton Reg. Med. Ctr. V. LaCroix*, 947 S.W. 2d 941, 950 (Tex. App.-Fort Worth 1997, no writ). As a threshold issue, a plaintiff must establish the standard of care before the fact finder may consider whether the defendant breached the standard of care or if such a breach constituted negligence. *Hannah*, 523 F.3d at 601; *Denton Reg. Med. Ctr.*, 947 S.W.2d at 950. A Plaintiff must therefore prove how a reasonably careful and prudent physician would have acted under the same or similar circumstances. *See Hood v. Phillips*, 554 S.W. 2d 160, 165 (Tex. 1977). Texas law imposes a presumption that the health-care provider has discharged his duty of care. *Thomas v. Beckering*, 391 S.W. 2d 771, 775 (Tex. Civ. App.--Tyler 1965, writ ref'd n.r.e.); *Shevack v. United States*, 528 F.Supp. 427, 431 (N.D. Tex. 1981). A physician is not a guarantor of a cure, and negligence is not imputed from an unsatisfactory outcome. *Hunter v. Robison*, 488 S.W. 2d 555, 560 (Tex. Civ. App.--Dallas 1978, writ ref'd n.r.e.); *Beckering*, 391 S.W. 2d at 775. Defeating the presumption of proper care requires affirmative proof of negligence and proximate cause. *Williford v. Banowsky*, 563 S.W. 2d 702, 705 (Tex. Civ. App.--Eastland 1978, writ ref'd n.r.e.).

Expert testimony is required when the alleged negligence is "of such a nature as not to be within the experience of the layman." *FFE Transp. Serv., Inc. V. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004)(quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982))(other citations omitted). Particular to the medical context, expert testimony is required to establish the applicable standard of care "unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman . . . ." *Hannah*, 523 F.3d at 601 (quoting *Hood v, Phillips,* 554 S.W. 2d 160, 165-66 (Tex. 1977)); *Banowsky*, 563 S.W. 2d at 705. The Plaintiff must similarly offer expert testimony on the issue of causation. *Arlington Memorial Hosp. Found., Inc., v. Baird*, 991 S.W. 2d 918, 922 (Tex. App. Fort worth 1999, pet. denied)(citation omitted).

To establish medical malpractice under California law, Plaintiff must prove four elements: (1) a duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. *Hanson v. Grode*, 76 Cal. App. 4th 601, 606, (Cal. App. 2d Dist. 1999). Under California law, with a narrow "common knowledge" exception, expert testimony is required to establish breach of the standard of care in a medical malpractice case. *Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal. 4th 992, 1001 (Cal. 1994) ("The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts . . . .") (citing *Landeros v. Flood*, 17 Cal 3d 399, 410 (1976) (internal quotation omitted)).[2] As under Texas law, California law requires expert testimony on the issue of causation, which a plaintiff must prove within a reasonable medical probability. *See Jones v. Ortho Pharmaceutical Corp.*, 163 Cal. App. 3d 396, 402 (Cal. App. 2d Dist. 1985) (California) ("The law is well settled that in a personal injury action causation must be proven with a reasonable medical probability based upon competent expert testimony") (California); *Gunn v. McCoy*, 554 S.W. 3d 645, 658 (Tex. 2018) ("In medical-malpractice cases, the general rule is that 'expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors.") (citing *Jelinek v. Casas*, 328 S.W. 3d 526, 533 (Tex. 2010) (Texas)).

The ultimate standard of proof for establishing causation in a medical malpractice case is whether the "negligent act or omission is shown to be a substantial factor in bringing about the harm

---

[2] "The 'common knowledge' exception [under California law] is principally limited to situations in which the plaintiff can invoke the doctrine of *res ipsa loquitur*, i.e., when a layperson 'is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. The classic example, of course is the x-ray revealing a scalpel in the patient's body following surgery." *Flowers*, 8 Cal. 4th at 1001 (citations and footnote omitted).

and without which the harm would not have occurred." *Christus St. Mary Hosp. V. O'Bannon*, 227 S.W. 3d 868, 874 (Tex. Appx. Beaumont 2007, pet. denied)(citations omitted); *see also Arlington Mem'l*, 991 S.W. 2d at 922. A plaintiff must establish causation beyond the point of conjecture, and proof of mere possibilities does not support submission of the issue to a fact finder. *Christus*, 227 S.W. 3d at 874. In this regard, "mere speculation or conjecture is not sufficient to establish [a] causal connection between a defendant's conduct and the plaintiff's injuries." *Martin v. Durden*, 965 S.W.2d 562, 567 (Tex.App.-Houston [14th Dist.] 1997 writ denied)(citation omitted). And, "[t]he fact that a determination of causation is difficult to establish cannot, however, provide a plaintiff with an excuse to dispense with the introduction of some reasonably reliable evidence proving this essential element of his case." *Ortho Pharmaceutical Corp.*, 163 Cal. App. 3d at 403.

(2)    **Summers's Failure to Provide Expert Testimony to Support FTCA Claim**

As explained, Summers contends BOP medical providers did not timely diagnose a benign colonic tumor and as a consequence, he had to undergo surgical removal of the tumor and will have to use a colostomy bag for the rest of his life.

Plaintiff bears the burden to prove (1) the physician's duty to act according to an applicable standard of care for the treatment of benign colonic tumors; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *See Hannah*, 523 F.3d at 601. And, as noted under both California and Texas law, expert testimony is generally required on these issues. *Ortho Pharmaceutical Corp.*, 163 Cal. App. 3d at 402; *Gunn*, 554 S.W. 3d at 658. Plaintiff's claims raise issues concerning treatment of a rectal tubulovillous adenoma (rectal tumor), the standard of care for such treatment, and the potential causal link between alleged delays in diagnosis and treatment and Plaintiff's medical outcome. These are not matters of common knowledge or within the experience of laymen. *See Prindle v. United States*, No. 4:10-cv-054-A,

2011 WL 1869795, at *1-2 (N.D. Tex. May 13, 2011) (holding that expert testimony was required to establish standard of care with respect to FTCA claim that medical personnel were negligent in failing to diagnose and treat renal carcinoma). Thus, Plaintiff must present expert testimony to establish the standard of care and breach of that standard regarding appropriate diagnosis and treatment of his rectal tumor. *See Hannah*, 523 F.3d at 601.

Under the Court's third amended scheduling order, Summers was required to disclose all persons with information on any claim or defense by May 11, 2018, and discovery closed on this same date. Third Amended Scheduling Ord. 1 (doc. 106). Summers has not designated an expert to testify on his behalf and did not make any Rule 16 disclosures as required by the Court. Several months earlier in November 2017, Summers had sought a prior extension of the then applicable disclosure deadline of December 8, 2017, which the Court subsequently extended two additional times. Mot Extension, Orders, (docs. 99, 102, 106). In an appendix to that November 2017 motion, Summers submitted an October 17, 2017 "Affidavit and Certificate of Merit," signed by an Illinois physician. (Docs. 99, 99-1.) Summers has not provided any disclosure indicating that this physician would or could support his claims with expert testimony. Furthermore, it appears that the "Affidavit and Certificate of Merit" was prepared to comply with an Illinois statutory requirement, similar to the Texas law requirement that a medical malpractice Plaintiff file a threshold expert report at or near the outset of the litigation. *See* 735 Ill. Comp. Stat. 5/2-622(a)(1–3) (2013) (requirement that any action seeking recovery for medical malpractice must be supported by medical report from health care professional or meet exceptions); Tex. Civ. Prac. & Rem. Code § 74.351(a) (West 2017) (requirement that a party filing a health care liability claim in Texas support such claim with an expert report filed 120 days after answer). That requirement does not apply in FTCA litigation. *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 297-98 (5th Cir. 2016) ("In sum, section 74.351

answers the same questions as [Federal Rules of Civil Procedure] Rules 26 and 37, and these Rules represent a valid exercise of Congress' rulemaking authority. Accordingly, a federal court entertaining state law claims may not apply section 74.351.").

Moreover, the Illinois physician's affidavit is insufficient to establish the applicable standard of care or causation. While the Illinois physician opines that there was a "significant delay in diagnosis from time of fecal occult positive test to time of definitive treatment" (doc. 99-1, at 2), nowhere does the physician identify the applicable standard of care. The physician similarly identifies no facts leading to the conclusion that, within a reasonable medical probability, the purported delay proximately caused Plaintiff to receive different "definitive treatment" than he would have received had there been no delay.

Furthermore, the Court also notes that Summers never sought the appointment of an expert under Federal Rule of Evidence 706. Federal Rule of Evidence 706(a) provides the Court authority to appoint an expert to aid the parties, but the decision to appoint rests solely in the Court's discretion and is to be "informed by such factors as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert view." *Tangwall v. Robb*, No.01-10008-BC, 2003 WL 23142190, at *3 (E.D. Mich. Dec. 23, 2003) (citations omitted). But in this case, any request by Summers would likely not have been to provide a neutral expert. Instead Summers would have sought to have the Court appoint an expert to help him prove the elements of his medical negligence claim under the FTCA. "Litigant assistance is not the purpose of Rule 706." *Daker and Kennedy, v. Wetherington*, No.1:01-CV-3257-RWS, 2006 WL 648765, at *5 (N.D. Ga. March 15, 2006) (citations omitted); see *Pedraza v. Jones,* 71 F.3d 194, 197 n. 5 (5th Cir. 1995) (rejecting inmate plaintiff's request for appointment under Rule 706 when that appointment was only for his own benefit). Instructive is

another district court's rejection of a pro se party's request for appointment of an expert in a legal malpractice case:

> The plaintiff's failure to secure an expert witness, after being given repeated opportunities by the Court to finds such a witness, demonstrates that the plaintiff is unable to prove his case. Moreover, the Court finds that the plaintiff's circumstances are not so "compelling" as to require the Court to appoint an expert on the plaintiff's behalf. See Ledford[v. Sullivan], 105 F.3d 354, 358-59 (7th Cir. 1991). Indeed, the appointment of an expert witness for the plaintiff in this case under Rule 706 would be tantamount to the Court assisting the plaintiff in proving his case against the defendants. Rule 706 was not designed to provide such relief to a litigant.

*Tangwall*, 2003 WL 23142190 at *4. Thus, any invocation of Rule 706 by Summers for the appointment of an expert to support his claim of medical malpractice would not have been consistent with the purpose of Rule 706. *See generally Hannah*, 523 F.3d at 600-01 (affirming district court's denial of inmate's request to appoint an expert under Rule 706 for an FTCA claim).[3]

Because Summers failed to designate an expert, in spite of the multiple extensions of time provided by the Court, he is unable to establish the standard of care or breach of that standard regarding diagnosis and treatment of rectal tumors. *See Id.* at 602 (affirming district court's summary judgment in favor of defendant where plaintiff did not designate nor hire an expert to testify regarding the applicable standard of care and how the care received breached that standard); *Hibbs v. United States*, No. 3:11-CV-2601-N-BH, 2013 WL 4434800, at *5 (N.D. Tex. Aug. 19, 2013) (granting summary judgment because plaintiff did not designate an expert in medical malpractice claim); *Prindle v. United States*, No. 4:10-cv-054-A, 2011 WL 1869795, at *1-2 (N.D. Tex. May 13, 2011). That Plaintiff believes BOP medical staff could have prevented the removal of part of his colon/rectum is not evidence that the treatment he received fell below the appropriate standard of

---

[3] Summers also did not seek appointment of an expert on the basis that he proceeds in-forma-pauperis. But his pro-se pauper status alone would not qualify him for appointment of an expert. *See Hannah*, 523 F.3d at 601 (rejecting argument that pro-se IFP inmate litigant was entitled to an appointed expert under § 1915 and noting "the plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant") (quoting *Pedraza*, 71 F.3d at 196)).

care. *See generally Martinez v. Griffin*, 840 F.2d 314, 315 (5th Cir. 1988). Indeed, the Fifth Circuit stated in *Martinez* that it is not the place for federal courts to second-guess what is "obviously careful diagnosis and adequate medical treatment" just because the prisoner is unhappy. *Id.*

Without expert testimony, Summers has not raised, and at this point cannot raise, a genuine issue of material fact that the BOP medical providers alleged failure to diagnose and treat his benign rectal tumor were the proximate cause of his injuries. Summers contends medical staff ignored his condition and failed to provide care, which caused the surgical removal of the tumor and the resulting placement of a colostomy, and result that he must now use a colostomy bag. Despite such claims, expert testimony is required to establish proximate cause for the surgery, whether any delay in surgery was caused by the BOP medical providers' negligence, an outside contractor's negligence or a natural progression of the benign tumor's growth. *See Jelinek*, 328 S.W.3d at 534, 540 (finding plaintiff's expert did not establish that hospital's failure to provide antibiotics for four days caused colon cancer patient's pain and suffering beyond that caused by the cancer).

In sum, Plaintiff's opinion regarding his medical condition and the cause of his injuries is not competent summary judgment evidence. *See Jelinek*, 328 S.W.3d at 534 (general experience and common sense of lay person not sufficient to evaluate medical conditions and whether they were probably caused by hospital's temporary failure to treat the condition with antibiotics). Plaintiff cannot establish a genuine issue of material fact with regard to his alleged injuries and the proximate cause of those injuries because he has not designated an expert to provide medical testimony in support of his claims under the FTCA. *See Hannah*, 523 F.3d at 601.

Thus, as Summers has failed to provide expert testimony or show that he could obtain expert testimony, he cannot create a material fact issue on whether the BOP medical providers cited in this

suit breached a duty to meet a particular standard of care that proximately caused his injuries. The motion for summary judgment of the USA must be granted as to Summers's claim under the FTCA.

D.  **Summers's Claims of a Constitutional Violation**

Summers contends that the United States was deliberately indifferent to his serious medical needs in violation of the Constitution. Am. Complaint 2, 13 (doc. 75-1). As the sovereign, the United States is immune from suit, except to the extent that it has waived its immunity and has consented to be sued." *Huff v. Neal*, 555 Fed. Appx. 289, 296 (5th Cir. Jan. 27, 2014) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1980). Consequently, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475.

Moreover, the burden of establishing federal jurisdiction rests on the party seeking to invoke it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)).

Plaintiff claims that the United States is liable to him for violation of his constitutional right under the *Bivens* doctrine. In the *Bivens* case, the Supreme Court recognized an individual's right to seek recovery for violation of constitutional rights by a person acting under color of federal law. 403 U.S. at 297. *Bivens* is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded

under 42 U.S.C. § 1983 to parties injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10(5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials"),*overruled on other grounds, Castellano v. Fragozo,* 352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003). But as the Fifth Circuit has succinctly stated, "[a BOP inmate] may bring a *Bivens* action against individual officers for an alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP officers in their official capacities as such claims are barred by the doctrine of sovereign immunity." *Gibson v. Federal Bureau of Prisons,* 121 F. App'x. 549, 551 (5th Cir. 2004) (citing *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 71-72 (2001) and *Hafer v. Melo,* 502 U.S. 21, 25 (1991)); *see also Brown v. United States,* No. 3:97-cv-159-P, 1997 WL 446452, at * 6 (N.D. Tex. July 29, 1997) ("It is well settled, however, that no waiver of sovereign immunity exists with respect to claims for constitutional torts. As the Fifth Circuit has observed, 'suit[s] for damages against the United States based on the Constitution [are] not contemplated by *Bivens* and its progeny.' Consequently, the Court lacks jurisdiction to entertain Plaintiff's constitutional tort claim.") (citations and footnote omitted)).

Thus, to the extent Summers assert a claim against the United States for an alleged constitutional violation, the Court lacks subject matter jurisdiction to entertain such a claim. The motion for summary judgment of the USA must be granted as to Summers's constitutional claim.

### III. CONCLUSION and ORDER

It is therefore **ORDERED** that the motion for summary judgment of remaining defendant United States of America (doc. 111) is **GRANTED**, such that Plaintiff Todd Wayne Summers's claim against the United States of America for violation of a constitutional right is **DISMISSED** for

lack of jurisdiction, and Summers's remaining claim against the United States under the FTCA is **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

Signed December 20, 2018.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE